# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

THOMAS LEE ALLAMONG,
      Plaintiff,                       CIVIL ACTION NO. 07-11392

    vs.                             DISTRICT JUDGE VICTORIA A. ROBERTS

                                    MAGISTRATE JUDGE MONA K. MAJZOUB
COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** This Court recommends that Plaintiff's Motion for Summary Judgment (Docket no. 10) be **DENIED**, and that of Defendant (Docket no. 15) **DENIED** and the case remanded for further proceedings consistent with this Report.

\*\*\*

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income on December 10, 2003 alleging that he had been disabled since February 23, 2000 as a result of back pain, weakness, arthritis in the hands, feet, hips and elbows, and Human Immunodeficiency Virus infection (HIV). (TR 30, 35, 39, 48). The Social Security Administration denied benefits. (TR 30-38). A requested *de novo* hearing was held on July 19, 2005 before Administrative Law Judge (ALJ) Sherwin F. Biesman. (TR 18, 332A). The ALJ subsequently found that the claimant was not entitled to Supplemental Security Income or Disability Benefits because he had not been under a disability at any time through the date of the ALJ's decision. (TR 18). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 5). The parties filed Motions for Summary Judgment. The issue Plaintiff raises for review is whether the ALJ's decision is supported by substantial evidence.

Plaintiff was 43 years old at the time of the administrative hearing. (TR 334). Plaintiff has a high school education and attended a welding course. (TR 65, 334, 336). Plaintiff was employed as a groundskeeper and a welder. (TR 75, 335). Plaintiff has a good relationship with his sister and she helps him out financially. (TR 334-35).

Plaintiff has HIV and arthritis in his hands, feet and hips. (TR 336). Plaintiff rates the arthritis pain as a four on a scale of one to ten. (TR 337). Plaintiff testified that the arthritis pain bothers him most in his hands, left elbow and feet and he does not take a lot of pain medication because of his HIV medications. (TR 68, 337). Plaintiff testified at the hearing that he had last seen his primary physician approximately a year and a half before the hearing. (TR 337). Plaintiff also testified at the hearing that his health was "pretty good right now." (TR 336).

Plaintiff testified that from 1998 to 2002 his body was getting used to the medications he took each day and he felt "lousy." (TR 339). He had fatigue and bowel problems that required him stay near a bathroom. (TR 338). Plaintiff testified that he started feeling better around 2002. (TR 338). Plaintiff testified that his side effects have decreased since then due to different dosages of the medications. (TR 343). Plaintiff's current side effects include fatigue, weakness and diarrhea. (TR 68-69, 343). Plaintiff also gets headaches but they are not as severe as they used to be. (TR 343). Plaintiff has regular blood work to monitor the HIV and it has been "good" unless he is ill. (TR 344).

Plaintiff testified that he was under a psychiatrist's care and taking medication for his nerves. (TR 345). Plaintiff testified that he was "[a] lot calmer" at the time of the hearing than he had been earlier in the year. (TR 345). However, Plaintiff testified that he could not go back to work eight hours a day due to his digestive issues, including the diarrhea, a side effect of his medication. (TR

2

345). He testified that his diarrhea happens anytime, anywhere. (TR 345). On a good day he will have diarrhea only two or three times. (TR 345). On a bad day, he will have diarrhea two to four times an hour for three or four hours of the day. (TR 345). He has about three bad days a week. (TR 345). He testified that he feels exhausted and "[w]iped out" afterwards. (TR 345). Plaintiff reports that his sleep is affected by the pain in his hands and feet, having night sweats, and his need to use the bathroom. (TR 68).

*Medical Evidence*

Plaintiff was diagnosed with HIV in 1998 and began treatment for HIV at the University of Kansas Medical Center with Daniel R. Hinthorn, M.D. (TR 184, 191). Plaintiff was treated with Viracept, Combivir and Bactrim for the HIV and Vicodin for headaches. (TR 184, 191). The treatment notes indicate that Plaintiff suffers episodes of diarrhea of varying intensity secondary to his medications. (TR 104, 112, 116, 138, 140, 142-44, 151, 154, 338). Records from the Medical Center show that in September 1998 Plaintiff reported one episode of watery stool and increased fatigue. (TR 186). In December 1998 Plaintiff reported that he could usually control the diarrhea through dietary modification. (TR 179). In May 1999 Plaintiff reported that he did not have much energy and he felt depressed. (TR 170). He also reported that he had low back pain. (TR 170). Plaintiff often reported problems sleeping and was prescribed Restoril to assist with his sleep. (TR 166, 169, 170). On September 25, 2001 Plaintiff reported diarrhea occurring eight to ten times daily. (TR 142). On December 28, 2001 Plaintiff reported diarrhea occurring ten to fifteen times daily. (TR 135).

Plaintiff underwent chest x-rays in September 2001 that showed no evidence of pneumonia or other acute pulmonary disease process or suggestion of granulomatous infection. (TR 145). In

2001 Plaintiff also complained of sharp, shooting pain in the right thumb, second and third metacarpals and left elbow increasing with movement and pain in his lower back. (TR 103, 107, 111, 126, 134, 138, 142). By March 2002 Plaintiff reported improvement in his diarrhea as a result of taking calcium. (TR 127). X-rays on March 27, 2002 revealed mild degenerative changes in the lower cervical spine and the MTP joints bilaterally in the feet. (TR 130-33). In April and May 2002 and February and April 2003 Plaintiff reported no diarrhea. (TR 101, 107, 119, 122).

Plaintiff began treating at Hurley Medical Center in Michigan with E. Habte-Gabr, M.D. on November 11, 2003. (TR 250). Plaintiff reported that he used to have diarrhea three to four times a day and that it was much less frequent by November 2003. (TR 250). Plaintiff complained of pain in his elbows, hands and feet and Dr. Habte-Gabr noted that there was no swelling of the joints. (TR 250). Plaintiff reported that his lower back pain usually resulted from long standing or walking and the pain radiated to both thighs. (TR 251). Dr. Habte-Gabr noted that Plaintiff had mild diarrhea, likely resulting from the Viracept, yet Plaintiff should continue with the Viracept and Combivir. (TR 254). On December 2, 2004 Plaintiff reported to Dr. Habte-Gabr that he was having diarrhea three to four times per day, as a side effect of the Viracept. (TR 219). The doctor advised Plaintiff to take 500 mg. of calcium per day and if that did not work, to try Imodium. (TR 220). If the diarrhea did not improve he would consider changing medications in the future. (TR 220). On March 3, 2005 Dr. Habte-Gabr noted that Plaintiff had "no diarrhea" and "no side effects" from the medication, including Viracept and Combivir. (TR 319-20).

On January 6, 2004 Dr. Habte-Gabr noted that Plaintiff was asymptomatic for HIV and was responding well to the antiretroviral medication. (TR 249). On June 1, 2004 Plaintiff complained of depression, including sleeplessness, headache, aches, sadness and some crying. (TR 240).

4

Plaintiff reported to Dr. Habte-Gabr that he had taken Zoloft in the past and it did not help. (TR 242). Dr. Habte-Gabr prescribed Paxil and referred Plaintiff to a psychiatrist. (TR 242). On July 1, 2004 Plaintiff had a follow-up consultation with Dr. Habte-Gabr for his complaints of depression and reported that he had been taking Zoloft and his symptoms were "better." (TR 237). Plaintiff had not followed-up on the prior referral to a psychiatrist due to the geographic location of the psychiatrist, so Dr. Habte-Gabr referred him to a different psychiatrist. (TR 237). On September 2, 2004 Dr. Habte-Gabr noted that Plaintiff had decided not to see a psychiatrist and Plaintiff reported that "he is better now." (TR 229). Plaintiff reported daily diarrhea from the Viracept. (TR 229). On December 2, 2004 Dr. Habte-Gabr noted that Plaintiff was still showing signs and symptoms of depression but was not suicidal. (TR 219). Plaintiff continued to have no HIV symptoms, his viral loads remained below the level of detection and his CD4 counts remained high. (TR 219). Plaintiff reported having diarrhea three to four times per day and Dr. Habte-Gabr recommended taking calcium or Imodium. (TR 219-20).

On March 3, 2005 Dr. Habte-Gabr reported that Plaintiff was doing "very well" with his HIV. (TR 319). The doctor noted that Plaintiff had not taken his Paxil, however, Plaintiff finally saw a psychiatrist or psychologist who also advised taking Paxil so Plaintiff finally took it and his depression was "much improved." (TR 319). On May 5, 2005 Dr. Habte-Gabr noted that Plaintiff continued to be asymptomatic for HIV and was tolerating his medications "very well except for on and off diarrhea and soft bowel movement." (TR 315). Dr. Habte-Gabr also noted that Plaintiff had no headaches, fever, chills, sore throat, pain on swallowing, substernal pain, cough or GI symptoms. (TR 315). It was noted that Plaintiff would continue with the Viracept, Combivir and Paxil. (TR 316). The doctor also noted that the manifestation of depression had been "very significant" and

was worked out with his doctors. (TR 315). Plaintiff continued with the Paxil and seemed "to be doing fairly well." (TR 315).

Plaintiff treated at Catholic Charities from December 16, 2004 through April 14, 2005 for his complaints of depression. (TR 259-308). The reasons given for termination of services were noted as "client stopped" and "goals accomplished." (TR 261). Plaintiff was admitted with a diagnosis of major depressive disorder, alcohol related disorder and anxiety disorder due to AIDS. Plaintiff's final diagnosis was depression. (TR 261). Plaintiff reported that in addition to his HIV diagnosis, he was also depressed because his dog had congestive heart failure. (TR 219, 266). In December 2004 the clinician noted that Plaintiff had numerous indicators of depression and a high risk of suicide. (TR 294). On January 12, 2005 Plaintiff was prescribed Paxil and Seroquel. (TR 272). On March 31, 2005 the clinician noted that Plaintiff had increased his socializing and was showing an interest in future opportunities for traveling and socializing. (TR 269). On April 7, 2005 the clinician noted that Plaintiff's affect was good and he denied any risk of suicide at that time. (TR 275).

**ADMINISTRATIVE LAW JUDGE'S DETERMINATION:**

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 23, 2000 and suffered from Human Immunodeficiency Virus infection (HIV) and generalized arthritis, both severe impairments, he did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 17). The ALJ found Plaintiff's allegations regarding his limitations were not entirely credible and he retained the residual functional capacity to perform sedentary exertional level work. (TR 17). Based on Plaintiff's exertional capacity for sedentary work and his age, education and work experience, a

finding of "not disabled" was directed by the Medical-Vocational Rules, 201.21 and 201.22. (TR 18). Therefore, he was not suffering from a disability under the Social Security Act. (TR 18).

**STANDARD OF REVIEW:**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**DISCUSSION AND ANALYSIS:**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See* 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualification to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Plaintiff does not dispute the ALJ's findings that he retained the residual functional capacity to perform sedentary work. However, Plaintiff argues that the ALJ improperly disregarded evidence of non-exertional limitations caused by the side effects of the HIV medication. Plaintiff also alleges that the ALJ should have found that Plaintiff's emotional condition and the side effects from his medications were "severe" impairments. Therefore, argues Plaintiff, the ALJ erred in relying solely on the Medical Vocational Rules in his disability analysis. Finally, Plaintiff argues that the ALJ

improperly evaluated his credibility. (Docket no. 10 at 12).

*Whether Plaintiff's Mental Impairment and the Side Effects From His Medications Were "Severe" Impairments or Resulted in Non-Exertional Limitations*

At step two, the ALJ found that Plaintiff had the following "severe" impairments: Human Immunodeficiency Virus infection (HIV) and generalized arthritis. 20 C.F.R. §§ 404.1520(c) and 416.920(c). (TR 14, 17). At step three the ALJ determined that these impairments do not meet or medically equal the listed impairments in the Regulations, Appendix I, Subpart P. (TR 17).

    **a.**    **Side Effects of Plaintiff's Medications**

Plaintiff argues that the ALJ failed to consider the side effects of his HIV medications including fatigue, weakness and diarrhea in determining the severity of Plaintiff's HIV and whether he met the Listing and whether they resulted in non-exertional limitations at step five. (Pl.'s Reply at 2 and TR 343). In order to establish disability under the Listings, each requirement of the applicable Listing must be met. *See* 20 C.F.R. §§ 404.1525(d) and 416.925(d) ("We will not consider your impairment to be one listed in appendix 1 solely because it has the diagnosis of a listed impairment. It must also have the findings shown in the Listing of that impairment"); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria"). Section 14.00(D)(7) of the Listings for the evaluation of HIV infection provides that "[m]edical treatment must be considered in terms of its effectiveness in ameliorating the signs, symptoms, and laboratory abnormalities of the specific disorder, or of the HIV infection itself (e.g., antiretroviral agents) and in terms of any side effects that may further impair the individual. . . . each case must be considered on an individual basis, along with the effects of treatment on the individual's ability to function."

Contrary to Plaintiff's assertion, the ALJ properly considered Plaintiff's side effects

9

including Plaintiff's testimony regarding his fatigue and incontinence. (TR 15). The ALJ further considered Dr. Habte-Gabr's reports regarding Plaintiff's diarrhea relating to his medications, Plaintiff's lack of HIV symptoms and the doctor's statement that Plaintiff's "seems to be doing fairly well." (TR 14, 315). Furthermore, Plaintiff does not allege that he otherwise meets any of the criteria of Section 14.08, which is a requirement under Section 14.00.

Likewise, the ALJ determined that Plaintiff did not have non-exertional limitations as a result of the side effects of his medications. The record as a whole demonstrates that Plaintiff's clinical findings revealed no functional limitations associated with his HIV, that he was asymptomatic and responding well to the medications. As set forth above, there is substantial evidence including the records of Plaintiff's treating physicians, to support the ALJ's determination that Plaintiff did not have non-exertional limitations as a result of his HIV or the side effects of his HIV medications.

      **b.**    **Plaintiff's Emotional Condition**

Similarly, Plaintiff alleges that the ALJ failed to consider the severity of his mental impairment of depression, and whether it resulted in non-exertional limitations. Plaintiff did not initially list depression as a factor in his DIB and SSI application. (TR 47-56, 60). Plaintiff reported on June 7, 2004 in a Disability Report-Appeal form that his conditions changed and he suffered from depression as of January 1, 2004. (TR 83-89).

As set forth above, Dr. Habte-Gabr's records from June 1, 2004 stated that Plaintiff's "main problem" that day seemed to be depression and the record shows that Plaintiff's depression was given attention in the examinations that followed. (TR 240). Dr. Habte-Gabr prescribed Paxil and referred Plaintiff to a psychiatrist. (TR 242). Plaintiff treated at Catholic Charities from December 16, 2004 through April 14, 2005. (TR 261). Plaintiff presented at Catholic Charities with "severe

suicidality and depression." (TR 261).

The step-two burden of establishing a "severe" impairment has been characterized as "*de minimis*." *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986). Under the regulations, an impairment is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities, [such as] . . . [u]nderstanding, carrying out, and remembering simple instructions, [and][u]se of judgment." 20 C.F.R. §§ 404.1521 and 416.921. Furthermore, an impairment qualifies as "non-severe" only if it "would not affect the claimant's ability to work," regardless of the claimant's age, education, or prior work experience. *Salmi v. Sec'y of Health & Human Srvs.*, 774 F.2d 685, 691-92 (6th Cir. 1985). Only slight abnormalities that minimally affect a claimant's ability to work can be considered non-severe. *Higgs*, 880 F.2d at 862; *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985). Therefore, the application of the requirement to establish "severity" is quite "lenient," and generally it is "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs*, 880 F.2d at 862-63.

The ALJ found that the only severe impairments Plaintiff has are HIV and arthritis, thereby determining that Plaintiff's depression was not severe. Although the ALJ referred to Plaintiff's alleged depression, he did not otherwise evaluate Plaintiff's mental impairment as required by the Regulations. (TR 15). *See* 20 C.F.R. §§ 404.1520a and 416.920a. According to 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3), the Commissioner (when evaluating the severity of a mental impairment) must evaluate a claimant's deficits in activities of daily living, social functioning, and concentration, persistence, or pace and rate those on a five-point scale ranging from none, mild,

moderate, marked, and extreme. The regulations state that if "we rate the degree of your limitations in these areas as "none" or "mild", we will generally conclude that your impairment(s) are not severe...." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). The Commissioner must also evaluate whether the claimant has had any episodes of decompensation and use the following four-point scale: None, one or two, three, four or more. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4). The ALJ did not include this evaluation in his decision therefore his determination that Plaintiff's depression is not severe is not supported by substantial evidence.

The case must be remanded to the ALJ to evaluate Plaintiff's mental impairments as set forth in the Regulations[1]. The ALJ should state any evidence relied on to make that evaluation. If the ALJ determines that Plaintiff's mental impairment is severe, the ALJ must make new determinations at steps three through five, as necessary, including determining whether Plaintiff has limitations resulting from the mental impairment.

## *Plaintiff's Credibility*

Plaintiff argues that the ALJ did not properly assess his complaints of pain and the extent of his symptoms. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a

---

[1] For purposes of Plaintiff's Disability Insurance Benefits application, the ALJ must also determine whether Plaintiff's depression existed prior to the expiration of his insured status. *See Potter v. Sec'ty of Health and Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990). The parties do not challenge the finding that Plaintiff is insured for disability benefits through December 31, 2003. (TR 13, 30). If Plaintiff did not establish the onset of his alleged depression prior to December 31, 2003, Plaintiff's depression should not be considered with respect to Plaintiff's application for Disability Insurance Benefits. *See Capell v. Comm'r Social Sec. Admin.*, 105 Fed.Appx. 8 (6th Cir. 2004). However, Plaintiff also applied for Supplemental Security Income and there is no insured status requirement for SSI. *See Fillou v. Sec'ty of Health and Human Servs.*, 622 F.Supp. 346, 347 (N.D. Ill. 1985).

witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *See id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ found that "objective medical evidence shows that the claimant has an underlying medically determinable impairment that could reasonably cause or produce the pain or other symptoms alleged by the claimant." (TR 15). However, the ALJ further determined that Plaintiff lacked credibility regarding the extent to which he is impaired and found it "questionable whether the pain and other symptoms are as severe as those alleged" by Plaintiff. (TR 15). The ALJ specifically noted that Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible in light of the degree of medical treatment required and discrepancies between Plaintiff's assertions regarding his ability to work and the medical evidence. (TR 15).

The ALJ cites medical records showing that Plaintiff had only "mild symptoms" related to his generalized arthritis, including March 2002 imaging studies showing "mild" degenerative changes in Plaintiff's feet, MTP joints bilaterally and lower cervical spine. (TR 130-33). The ALJ also cited State Agency physician Abdullah Raffee, M.D.'s examination of Plaintiff on April 9, 2004, noting generalized arthritis of the smaller joints of the hands and feet, no abnormality that could be determined in these areas and a "completely normal" range of motion. (TR 200-02). Dr. Habte-Gabr noted on December 2, 2004 that Plaintiff was having "no symptoms" of his HIV and his viral loads had remained below the level of detection. (TR 219).

The ALJ did not rely solely on objective medical evidence to determine Plaintiff's credibility. The ALJ also examined evidence of the treatment that Plaintiff sought for pain and other symptoms and his activities of daily living. The ALJ noted that at the hearing Plaintiff testified that he had not seen his primary treating physician in 18 months. (TR 15, 337). Plaintiff argues that the other medical records indicated that Plaintiff sought attention for his HIV status regularly from 1998

14

until December 2, 2004 and that this attention is consistent with the "controlled" status of his HIV. (TR 219, 220). The ALJ may properly consider treatment used to relieve pain and other symptoms, including medications, in determining credibility. The ALJ also noted that Plaintiff performs activities of daily living, including household chores such as cleaning and laundry, and he drives and shops. (TR 15, 70). The ALJ noted that in May 2005 Dr. Habte-Gabr noted that Plaintiff reported he was "fairly active" at the time and helping his sister with housework. (TR 14, 315). The ALJ pointed out that on June 7, 2004, Plaintiff reported that he suffers from depression and hates "leaving the house or being around people," however, on a December 6, 2004 questionnaire Plaintiff reported that he enjoys "being active and busy" and feels that he has "a full life." (TR 83, 260).

In view of the evidence, the ALJ could reasonably conclude that Plaintiff's subjective complaints regarding the extent to which he is impaired and the impact of his symptoms and impairments on his ability to work were not entirely credible. (TR 15). The ALJ's determinations regarding Plaintiff's credibility are supported by substantial evidence.

### *Reliance on the Grid to Determine Plaintiff's Disability Status*

Finally, Plaintiff argues that because he has non-exertional limitations related to depression and the side-effects of his HIV medications, the ALJ erred in relying on the Grid to determine whether he was disabled. The Commissioner can meet his burden at the fifth step of his analysis by referring to the Grid, 20 C.F.R. Pt. 404, Subpt. P, App. 2, which dictates a finding of "disabled" or "not disabled" based on the claimant's exertional restrictions, age, education, and prior work experience. *See Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). But if a claimant has both exertional and nonexertional impairments, the Commissioner is not permitted to rely on the Grid alone to determine whether a disability exists. *See id.* at 1173-74; *see also* 20

15

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e). If a claimant's non-exertional limitations prevent the claimant from doing the full range of work at the designated level, then the Commissioner must come forward with some reliable evidence showing that there remain a significant number of jobs that the claimant can perform, taking into account the claimant's exertional and non-exertional limitations. *See Shelman v. Heckler*, 821 F.2d 316, 321-22 (6th Cir. 1987). Non-exertional impairments are defined as "certain mental, sensory, or skin impairments" or "impairments [which] result solely in postural and manipulative limitations or environmental restrictions." 20 C.F.R. Part 404, Subpt. P, App. 2, Section 200.00(e).

The ALJ found that Plaintiff was able to perform a full range of sedentary work. At step five of the sequential analysis, the ALJ subsequently applied Rules 201.21 and 201.22[2] of the Grids, 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table No. 1, to conclude that Plaintiff was not disabled during the relevant time period based upon his factual findings that: (1) Plaintiff had the RFC to perform a full range of sedentary work; (2) Plaintiff's age category was "younger individual" (between the age of 18 and 44); (3) Plaintiff had more than a high school education; and (4) Plaintiff had past, relevant work. (Tr. 16-18).

---

[2] Rule 201.21 provides that a claimant who is limited to sedentary work, is 45-49 years old, has a high school education or more, and has a skilled or semi-skilled work history with skills that are not transferrable is not disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.21.

Rule 201.22 provides that a claimant who is limited to sedentary work, is 45-49 years old, has a high school education or more and has a skilled or semi-skilled work history with transferable skills is not disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, rule 201.22. Although the ALJ cited to the Rules for individuals from age 45-49 after finding that Plaintiff was 43 at the time of the decision, this was harmless error. For an individual under the age of 45, age is a more advantageous factor in making an adjustment to other work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h).

16

As set forth above, this case must be remanded for consideration of Plaintiff's mental impairments. If the ALJ determines that Plaintiff's mental impairments are severe and that Plaintiff has non-exertional limitations as a result, at step five the ALJ may not rely solely on the Grid to determine whether Plaintiff is disabled and must conduct a new step five analysis considering other evidence, including testimony of a vocational expert, to determine whether there is work available that Plaintiff can perform.

**RECOMMENDATION:**

The Commissioner's decision is not supported by substantial evidence. Defendant's Motion for Summary Judgment (Docket no. 15) should be DENIED. Plaintiff's Motion for Summary Judgment (Docket no. 10) should be DENIED. The case should be REMANDED back to the Commissioner for further proceedings consistent with this Report.

**REVIEW OF REPORT AND RECOMMENDATION:**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must

be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: June 10, 2008                               s/ Mona K. Majzoub
                                                   MONA K. MAJZOUB
                                                   UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 10, 2008                               s/ Lisa C. Bartlett
                                                   Courtroom Deputy